UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-220-RJC

| | | |
|---|---|---|
| JORGE GALEAS, JR., | ) | |
| (also known as "Jorge Gevara") | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| WILLIAM HORNE, Sergeant, | ) | |
| Lanesboro Correctional Institution; | ) | |
| (FNU) BENNETT, Correctional Officer, LCI; | ) | |
| (FNU) MASON, Correctional Officer, LCI; | ) | |
| (FNU) LOWERY, Correctional Officer, LCI; | ) | |
| (FNU) LYLES, Correctional Officer, LCI; | ) | |
| (FNU CURLEE, Correctional Officer, LCI; | ) | |
| (FNU) AARON, Correctional Officer, LCI, | ) | |
| | ) | |
| **Defendants.** | ) | |

**THIS MATTER** comes before the Court on the following documents and related filings:

1. Motion to Compel by Plaintiff, (Doc. No. 37);

2. Motion for Summary Judgment by Defendants Horne, Bennett, Mason, Lowery, Lyles, Curlee and Aaron, (Doc. No. 38);

3. Motion for Protective Order by Defendants Horne, Bennett, Mason, Lowery, Lyles, Curlee and Aaron, (Doc. No. 41);

4. Motion to Compel by Plaintiff, (Doc. No. 42); and

5. "Pro se Motion" by Plaintiff, (Doc. No. 52).

## I. BACKGROUND

A. Procedural Background

On May 4, 2011, Plaintiff, a prisoner of the State of North Carolina housed at Lanesboro

Correctional Institution ("LCI"), filed this action pursuant to 42 U.S.C. § 1983.[1] Plaintiff alleges that in December 2010, while an inmate at Lanesboro Correctional Institute, Defendants FNU Bennett ("Bennett"), FNU Mason ("Mason"), FNU Lowery ("Lowery"), and Sergeant Horne ("Horne") used excessive force against him when he failed to comply with their command to submit to handcuffs, and that he sustained several painful short-term and long-term injuries as a result of their use of force. (Doc. No. 1 at 2-5). Plaintiff further alleges that on one occasion in January 2011, Defendants Horne, FNU Lyles ("Lyles"), and FNU Curlee ("Curlee") threatened to use force against him, removed him from his cell, and used force to take him to segregation because he failed to stand up at his door during a morning head count and refused to respond to a sergeant's questions about the incident. (Doc. No. 1-1 at 5-7). Plaintiff complains that he was not served breakfast or lunch on that date. (Id. at 7). Plaintiff asks the Court to prosecute these Defendants, and for other relief. (Doc. No. 1 at 4).

In his Amended Complaint, (Doc. No. 3), Plaintiff essentially re-alleges the matters set forth in his original Complaint, and he also alleges that on May 7, 2011, after he filed his original Complaint, Officers Pratt and Kiker humiliated, intimidated, and scared him during their search of his cell; that the search was performed in retaliation for his exercise of his First Amendment rights; that on May 14, 2011, Sergeant Aaron directed Officers Boone, Hall, and Clawson to take him to segregated confinement when he was unable to stand at his door for a head count; and that

---

[1] This is one of at least twelve civil rights actions that Plaintiff has filed in this Court. In some of the actions, Plaintiff has identified himself as Jorge Galeas, Jr. Plaintiff is identified as "Jorge Gevara" by the North Carolina Department of Public Safety. The Court has dismissed six of these actions, and on November 28, 2012, the Court entered an Order in one of Plaintiff's cases, noting that it would constitute Plaintiff's third strike under 28 U.S.C. § 1915(g) if Plaintiff either waived his appellate rights or if the dismissal was affirmed on appeal. See Galeas v. Previtire, 3:11-cv-582 (W.D.N.C. Nov. 28, 2012).

Sergeant Aaron took that action in retaliation for his exercise of his First Amendment rights. (Id. at 22-25). The Amended Complaint also seeks compensatory damages from all Defendants. (Id. at 27-28).

On May 12, 2011, the Clerk of Court entered an Order directing Plaintiff to provide certain financial documents relevant to his request to proceed without having to prepay the fees and costs for his case. (Doc. No. 2). After receiving the requested information, on June 8, 2011, the Clerk entered an Order granting Plaintiff's request to proceed in forma pauperis and directing LCI to remit various payments from his inmate trust account. (Doc. No. 7). On January 11, 2012, the Court entered an Order denying Plaintiff's four Motions for Reconsideration, two Motions to Amend, and a Motion for Copies; and dismissed as unexhausted Plaintiff's claims arising out of events occurring on May 7 and May 14, 2011, involving proposed Defendants Aaron, Pratt, Kiker, Boone, and Clawson. (Doc. No. 18 at 5). The Court denied leave to amend Plaintiff's Complaint to add as defendant the DOC, Dennis E. Marshall, Lawrence Parsons, Kory Dalrymple, and FNU Byrd. (Id. at 6). The Court allowed Plaintiff to proceed only on claims as to events that allegedly occurred in December 2010 and January 2011 and directed Bennett, Mason, Lowery, Horne, Doe, Lyles, Curlee, and Horne to respond. (Id. at 7).

On June 21, 2012, Defendants filed the instant Motion for Summary Judgment. (Doc. No. 38). On August 27, 2012, Plaintiff filed a Declaration in Opposition to Defendants' Motion for Summary Judgment.[2] (Doc. No. 53). On December 3, 2012, the Court entered an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), allowing Plaintiff additional

---

[2] On July 17, 2012, the Court granted Plaintiff's Motion for Extension of Time to File Response to Defendants' Motion for Summary Judgment, (Doc. No. 46), and on August 6, 2012, the Court granted Plaintiff's Motion for Second Extension of Time to File Response to Defendants' Motion for Summary Judgment, (Doc. No. 51).

time to respond to Defendants' Motion for Summary Judgment. (Doc. No. 57). On December 14, 2012, Plaintiff filed an "Affidavit of Fact and Objections to Order." (Doc. No. 59).

    B.    <u>Factual Background</u>

Defendants' summary judgment materials include the pleadings and all attachments and the affidavit of non-party Stephanie Leach. Plaintiff's summary judgment materials include his Amended Complaint, his Declaration in Opposition to Defendants' summary judgment motion, and his Affidavit of Facts and Objections to Order.

    1.    Allegations Relating to December 19, 2010

The first incident at issue occurred on December 19, 2010, when Plaintiff refused a direct order to come down from the top mezzanine in the Moore 1 Control Room. (Doc. No. 31-5 at 1). In response, Defendants Mason and Bennett went to Plaintiff's cell to ask him why he refused the order and told him to submit to handcuffs. (<u>Id.</u>; Doc. No. 3 at ¶ 23). Plaintiff responded that he needed a reason why he should submit to cuffs and Defendants' orders and demanded to speak to the sergeant. (Doc. No. 3 at ¶¶ 24-32). After Plaintiff asked many times for a reason why he needed to submit to handcuffs, Bennett called for backup, stating that Plaintiff was a threat. (<u>Id.</u> at ¶ 39). Lowery and "Officer John Doe 1" came inside the cell and Bennett allegedly grabbed Plaintiff and hit his chest. (<u>Id.</u> at ¶ 40). Bennett and Mason then allegedly threw Plaintiff onto the cell floor where Lowery and Officer Doe kicked him. (<u>Id.</u> at ¶ 41).

When Plaintiff got up from the floor, Bennett and Mason allegedly grabbed and twisted his arms, threw him onto his bed, slammed his face against the wall, and injured his nose. (<u>Id.</u> at ¶¶ 43; 44). Officer Doe then allegedly grabbed Plaintiff's legs while Bennett and Mason got on top of Plaintiff and put their knees in his back and twisted his arms. (<u>Id.</u> at ¶ 45). Bennett put

handcuffs on Plaintiff and together with Mason allegedly knocked Plaintiff to the cell floor and kicked his left arm, back, and left leg. (Doc. No. 3 at ¶ 47). Plaintiff claims that Bennett punched Plaintiff's jaw and Lowery and Officer Doe tried to grab Plaintiff's legs while he was attempting to get up. (Id. at ¶ 48). Bennett and Mason then allegedly picked Plaintiff up from the floor, threw him against the wall, and hit his head. (Id. at ¶ 54). The officers then removed Plaintiff from his cell against his consent. (Id. at ¶ 57). Plaintiff claims he did not resist or threaten the officers during these events. (Id. at ¶ 55). The Incident Report indicates that, after Plaintiff refused several direct orders to submit to handcuffs, Mason and Bennett used force to place him in handcuffs. (Doc. No. 31-5 at 3).

After being removed from the cell and block, Plaintiff was taken to the "Moore 1 side" where he met Defendant Horne. (Doc. No. 3 at ¶ 58). Plaintiff claims that Horne grabbed his arms, jerked him, and forced him to walk to the Segregation Unit. (Id. at ¶ 60). While there, a nurse came to see Plaintiff and took notes about the alleged assault. (Id. at ¶ 74). Plaintiff claims that the nurse noticed his swollen hand and he responded that he did not feel it, as it had been numb since 2007. (Id. at ¶ 78). Plaintiff claims his left arm was scratched and bruised, and that he had an extreme headache, felt dizzy, had blurred vision, and had severe pain in his nose. (Id. at ¶ 79). The incident report indicates that Plaintiff did in fact receive a medical screening, but the only injury noted was a small abrasion to Plaintiff's right arm. (Doc. No. 31-5 at 3). In her affidavit, Nurse Leach testified that in the December 19, 2010 checkup, Plaintiff's left hand was swollen. (Doc. No. 39-2 at ¶ 6: Leach Affidavit).

After returning to the cellblock later that day, Plaintiff declared a series of medical emergencies after experiencing shortness of breath, chest pain, and pain in his right shoulder, but received no response. (Doc. No. 3 at ¶ 82). The following day, December 20, Plaintiff allegedly

5

experienced such severe pain he could not get up from his bed; his hand was swollen and purple; and his nose hurt. (Id.). He claims that when he tried to move, he felt a severe pain running up and down his left side along his neck, spine, lower back, and hip. (Id. at ¶ 85). He claims the numbness from his left arm spread all over his shoulders, back, rib, lower back, leg, foot, and right shoulder, even reaching parts of his head and face. (Id. at ¶ 86). Plaintiff also claims he is unable to get up from bed, (id. at ¶ 88), and that he cannot move, cough, or sit normally without experiencing severe pain, (id. at ¶ 90).

Nurse Leach testified that after the check-up on December 19, 2010, Plaintiff submitted at least twenty sick call requests in which he complained of various kinds of pain. (Doc. No. 39-2 at ¶¶ 7-23: Leach Affidavit). In response to these requests, Plaintiff was seen repeatedly by nurses and the unit physician, all of whom found Plaintiff to be in normal health. (Id. at ¶¶ 6-27). Nurse Leach testified that Plaintiff was unhappy with the medical care he received, often demanding to see a "real specialist." See (Id. at ¶ 15). She also testified that he was assessed as drug-seeking after he repeatedly asked for pain medication stronger than the ibuprofen he had been given. (Id. at ¶¶ 16; 27).

Despite their professional opinions that Plaintiff was in normal health, Plaintiff's lumbar spine and hips were X-rayed on January 27 and again on March 17, 2011, when his left knee was X-rayed as well. (Id. at ¶¶ 10-14). The radiology reports for both days indicated that the X-rays were normal. (Id. at ¶¶ 10; 14). On October 18, 2011, Plaintiff underwent an MRI of his cervical spine after he complained of neck pain and numbness and tingling in his left arm. (Id. at ¶ 29). Although the radiologist noticed mild disc-bulging, he could identify no nerve root or cord compression. (Id.). Most notably, however, was that the radiologist determined that there was "no significant change" in that MRI from an MRI done in 2009. (Id.). On December 28,

2010, Plaintiff was charged with prison disciplinary infractions, but the charges were later dismissed. (Doc. No. 3 at ¶ 95). That same day Plaintiff was released from segregation to the general prison population. (Id. at ¶ 96).

Based on the foregoing allegations, Plaintiff claims that the conduct of Defendants Bennett, Mason, Lowery, Lyles, Horne and Officer Doe amounted to excessive force, unconstitutional seizure, violation of due process and other constitutional violations, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, violations of state law, and assault and battery under state tort law.

2. Allegations Relating to January 24, 2011

Plaintiff claims that on January 24, 2011, Defendants Horne, Lyles, and Curlee allegedly came to his cell and tried to strike him with batons for not getting up for the prison count. (Doc. No. 3 at ¶ 97). Plaintiff responded that he did not have to because they could see his face every time he went to breakfast, school, the shower, or the break room. (Id. at ¶ 107). Curlee then told Plaintiff to get dressed and that he would come back to take Plaintiff to segregation; Defendant Lyles stated that he was going to write Plaintiff up for his disobedience. (Id. at ¶¶ 108-09).

Plaintiff claims that shortly thereafter, Horne, Lyles, and Curlee returned to his cell, opened the door, and drew their batons. (Id. at ¶¶ 110-11). Horne snatched the bed sheet away and told Plaintiff to get out of bed. (Id. at ¶ 111). Plaintiff feared Defendants were going to beat him, as they allegedly had their batons raised in the air in a threatening manner. (Id. at ¶ 112). Plaintiff claims that they tried to force him to get up, allegedly attempting to strike him. (Id. at ¶ 114). Plaintiff tried to get up but it took him fifteen minutes to get up and dress. (Id. at ¶ 115). Curlee allegedly saw that Plaintiff's hand was swollen and asked if he wanted to "go to medical." (Id. at ¶ 117). Defendant Lyles allegedly said that Plaintiff's hand looked very purple.

7

(Id.). After he dressed, Plaintiff was taken against his will to Horne's office, where he was rudely questioned with foul language. (Id. at ¶¶ 118-19). When Plaintiff refused to answer, Horne grabbed Plaintiff's arm, raised him up and, together with Defendants Curlee and Lyles, escorted him to segregation. (Id. at ¶ 121).

Defendant Horne's alleged campaign of "harassment and secret reprisals" continued after Plaintiff submitted grievances on July 15 and August 20, 2009, and a class action suit on December 18, 2009. (Id. at ¶ 125). Plaintiff claims that Horne and other prison officials have been soliciting other correctional officers to participate in corruption and obstruct justice by fabricating false documents and reports against Plaintiff. (Id. at ¶ 126). Plaintiff claims that the prison staff responses to his two grievances were attempts to cover up the December 19, 2010, and January 24, 2011, incidents. (Id. at ¶¶ 127-41). Plaintiff claims this campaign was conducted because Plaintiff submitted grievances and filed lawsuits. (Id. at ¶ 140). Plaintiff claims that Horne and others further retaliated against Plaintiff by forcing Plaintiff "to get up from his bed" and by beating on Plaintiff's cell door during prison counts. (Id. at ¶¶ 142-44). Plaintiff claims that Defendants' goal is to "create torture cruel and unusual punishment and an extreme emotional distress." (Id. at ¶ 143).

### 3. Allegations Relating to Defendant Aaron

Plaintiff also claims that Defendant Aaron likewise inflicts emotional distress upon him. (Doc. No. 3 at ¶ 145). He allegedly screams at Plaintiff on a daily basis and requires him to get out of bed and stand at the cell door for the prison count. (Id. at ¶ 146). This causes Plaintiff to experience nightmares, insomnia, and further emotional distress. (Id. at ¶ 147).

Plaintiff alleges that Aaron's failure to follow prison policy by requiring Plaintiff, but no other inmate, to stand during the prison count violated Plaintiff's constitutional rights and caused

him mental anguish. (Id. at ¶ 169). He alleges that Aaron's actions were in retaliation for Plaintiff exercising his First Amendment rights. (Id. at ¶ 170).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for

the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

### A. Defendant Aaron

On January 11, 2012, this court entered an Order, (Doc. No. 18), which, among other things, dismissed as unexhausted all claims concerning matters that occurred on May 7 and May 14, 2011, involving Defendant Aaron. A review of the record indicates that these are the only two days for which Plaintiff submitted administrative grievances regarding Defendant Aaron. (Doc. No. 31: Attachments A-D). As exhaustion of administrative remedies before filing a civil action is mandatory, Plaintiff's remaining claims against Defendant Aaron are dismissed. 42 U.S.C. § 1997e(a).

### B. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore, the Supreme Court has recently reiterated that "[a]n inmate who is

gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 130 S.Ct. 1175, 1178-79 (2010). In Wilkins v. Gaddy, the Supreme Court observed:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

Id. at 1178-79 (citations omitted).

Defendants are entitled to summary judgment for Plaintiff's excessive force claim for the events that occurred on December 19, 2010. First, the events began when Defendants had to use force to restore discipline after Plaintiff refused a series of orders from Defendants. The incident report for that day indicates, and Plaintiff does not refute, that he refused an order to come down from the mezzanine of Moore Side 1. See (Doc. No. 31-5 at 1). Furthermore, Plaintiff's Amended Complaint shows that when Defendants went to Plaintiff's cell to question him, he refused numerous direct orders to submit to handcuffs. See (Doc. No. 3 at 5-7). While Plaintiff alleges that he never resisted the officers, this assertion is refuted by the evidence and by Plaintiff's own account of the events.

Furthermore, the relationship between the need for force and the amount of force used to restore discipline was closely matched. The record indicates that only minimal hands-on force was used to place Plaintiff in handcuffs. No other means of force such as pepper spray or batons

11

were used. Although Plaintiff claims he suffered a variety of unjust physical abuses, his contentions amount to nothing more than unsupported allegations. The evidence of record shows that the only injury Plaintiff suffered was a superficial abrasion on his right arm and some swelling on his hand. Despite the prison medical staff's opinion that plaintiff was in normal health, they continuously acquiesced to his demands for specialized and costly medical care in the form of two x-rays and an MRI, all of which came back normal. In sum, Plaintiff's allegations that Defendants' "threw" him against the wall, punched him in the jaw, kicked him, and then "slammed" him onto the floor are simply unsupported by the objective evidence in the record.

At most, Plaintiff suffered from a minor cut on his shoulder and some swelling in his hand. Although Wilkins made clear that the extent of a plaintiff's injury is not dispositive in an excessive force case, the extent of injury is still a relevant factor in determining whether the defendants used excessive force. See Wilkins, 130 S.Ct. at 1178 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim."). Here, the very minimal injuries sustained by Plaintiff simply do not support Plaintiff's contentions that Defendants used excessive force in placing him in handcuffs. Despite his allegation that he did not resist Defendants during the altercation, he admits that he repeatedly refused their demands to submit to handcuffs. The evidence shows that Defendants applied reasonable force, proportional to the need for such force, in a good faith effort to maintain and restore discipline, and not maliciously and sadistically for the very purpose of causing harm.

In sum, the Court finds that Plaintiff has not raised a genuine issue of material fact as to whether Defendants used excessive force against him. Rather, the uncontroverted evidence

shows that Defendants used the amount of force necessary to restore order and maintain discipline. Therefore, Defendants are entitled to summary judgment as to Plaintiff's excessive force claim.[3] Accord McMillian v. LeConey, No. 5:09cv175, 2011 WL 2144628, at *9 (E.D.N.C. May 31, 2011) (granting summary judgment to the defendant in an excessive force case where the plaintiff contended that he did not resist the officer in any way and that the officer "slammed" him against a wall and then "slammed" him onto the ground, where he had no discernible injuries), aff'd, 455 F. App'x 295 (4th Cir. 2011).

    C.    Other Eighth Amendment Claims

Plaintiff also purports to raise a series of other Eighth Amendment claims, including that Defendants Bennett and Mason failed to "provide [him] with probabl[e] cause that [he] caused a violation of the Rules and Regulations;" that Defendant Horne "forc[ed] [him] to get up and stand for count;" that Defendant Horne, Lyles, and Curlee "attempt[ed] to strike [him];" and that Defendant Horne failed to "post[] the change of Inmate Control Procedures [o]n the board." (Doc. No. 3 at ¶¶ 96, 113, 181, 184).

As noted above, the Eighth Amendment requires prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). To assess

---

[3] Plaintiff also raises a series of state law claims against Defendants Bennett, Mason, Lowery, and "John Doe" for the events that occurred on December 19, 2010. As the court finds that the rest of Plaintiff's claims present no genuine issue of material fact, the Court will decline to exercise supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

Defendants also contend that they are entitled to qualified immunity. Because Plaintiff has not raised a genuine issue of material fact as to whether his constitutional rights were violated in the first instance, the Court need not address whether Defendants are entitled to qualified immunity. Furthermore, as the Court finds that the force used was necessary to restore order and maintain discipline, Plaintiff's claim against Bennett, Mason, and Lowery for failing to intervene during the incident are likewise meritless.

13

whether a prison official has violated this duty, the Supreme Court has prescribed a two-pronged test. First, the alleged conditions of confinement must be "sufficiently serious" to deprive a prisoner of minimal civilized necessities. Id. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The second part of inquiry asks whether prison officials subjectively acted with "'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 302-03).

With the exception of the alleged "attempted striking," Plaintiff's Eighth Amendment claims fail under the first prong of the inquiry. None of these conditions can be fairly described as "sufficiently serious" deprivations to constitute an Eighth Amendment violation. Requiring prisoners to stand up for the prison count does not constitute cruel and unusual punishment. This alleged violation is simply a normal condition of life in a penal institution. As for Bennett and Mason not giving Plaintiff an explanation for how he violated the Rules and Regulations, the evidence shows that Plaintiff repeatedly refused to submit to handcuffs after refusing the request to come down from the upper mezzanine.

As for Defendants' alleged attempt at striking Plaintiff, any purported claim arising from this conduct must be dismissed pursuant to the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997(e). Plaintiff contends that on January 24, 2011, after he refused to stand up for the prison count, Defendants Horne, Lyles, and Curlee "attempted to strike him." He never specifically alleges what kind of harm he suffered from these attempts, but it is clear that his contention is that he suffered mental or emotional injuries as a result thereof. However, the PLRA provides that civil suits brought by prisoners for mental or emotional injury cannot be heard "without a prior showing of physical injury." Id. Again, Plaintiff never alleges that he suffered any type of physical harm from these attempts. This claim, therefore, along with

14

Plaintiff's other Eighth Amendment claims, presents no genuine issue of material fact and therefore cannot survive Defendants' motion for summary judgment.

D. First Amendment Retaliation Claims

Plaintiff claims in various sections of the Amended Complaint that Horne and other unnamed officers retaliated against him for exercising his First Amendment rights. Although it is not completely clear, Plaintiff appears to be arguing that Defendants retaliated against him by placing him in segregation on January 24, 2011. While retaliation by a public official for the exercise of a constitutional right is actionable, "*in forma pauperis* plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations" to survive dismissal by the district court. Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). The Adams Court reasoned that "[t]o hold otherwise would be to bring every unpopular decision by state actors within the scope of a cause of action for retaliation." Id.

Here, while Plaintiff claims that he was placed in segregation because he was exercising his constitutional rights, the uncontroverted evidence clearly indicates otherwise. First, his claims of retaliation never amounted to more than mere allegations. Furthermore, he readily admits that he refused repeated requests to get out of bed and stand at his door for the prison count. In sum, it is clear that there was no intricate conspiracy, led by Sergeant Horne, aimed at punishing Plaintiff for filing complaints and grievances. Indeed, Plaintiff's own recital of the facts indicates that he was placed in segregation because he was being unruly and disobedient, and he therefore needed to be separated from the general population to effectively maintain order inside the prison. In sum, Defendants' motion for summary judgment on Plaintiff's retaliation claims is granted.

E. RICO and Conspiracy Claims

Next, Plaintiff contends that Defendants Bennett, Mason, and Lowery violated the RICO Act by "conspir[ing] to obstruct justice by fabricating false charges" against him. (Doc. No. 3 at ¶ 174). He further claims that Horne, Lyles, and Curlee violated the RICO Act by "fabricating false reports about [Plaintiff] just to cover up the incidents." (Id. at ¶ 180).

While the RICO Act does allow private citizen suits for injury "by reason of a violation of section 1962," Plaintiff's RICO claims fail for a variety of reasons. See 18 U.S.C. 1964(c). First and foremost, the pleadings are completely devoid of any alleged facts or verifying evidence of Defendants' conduct that could plausibly serve as grounds for a RICO violation. Plaintiff seems to allege that Defendants violated the RICO Act by fabricating false charges and false reports, but Plaintiff's allegations are simply conclusory–in the entire complaint, the only time he mentions these false charges and reports is when he summarily concludes that the RICO Act was violated. Nowhere else in the pleadings does Plaintiff ever discuss, mention, or reference the allegedly false charges and reports, or even explain what they were. Such bare allegations are simply not sufficient to survive summary judgment. To survive summary judgment, Plaintiff "must do more than present a 'scintilla' of evidence in [his] favor. Rather, [he] must present sufficient evidence such that reasonable jurors could find by a preponderance of the evidence for the non-movant." Sylvia Dev. Corp., 48 F.3d at 818 (internal citations and quotation marks omitted).

The Court further notes that Defendants' alleged RICO violations for filing false charges and false reports are not even included in the list of felonies that constitute racketeering under 18 U.S.C. § 1961(1). While obstruction of justice is listed, it is completely unrelated to Plaintiff's claims. See, e.g., 18 U.S.C. §§ 1503 (influencing or injuring officer or juror generally), 1510

(obstruction of criminal investigations), and 1511 (obstruction of state or local law enforcement). Nor does Plaintiff allege that Defendants collected an unlawful debt. See 18 U.S.C. § 1962 (requiring that defendants engaged in a pattern of racketeering or collection of unlawful debt). Furthermore, Plaintiff has simply not presented evidence on summary judgment of the other elements required for a RICO Act violation. See, e.g., Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (requiring "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," which resulted in injury to the plaintiff). In sum, Plaintiff's conclusory allegations of a RICO violation by Defendants are completely unsubstantiated by the record and, therefore, cannot survive Defendants' motion for summary judgment.

Plaintiff also mentions that Defendants conspired to "cover up" their alleged retaliation for Plaintiff exercising his First Amendment Rights and to "obstruct justice." (Doc. No. 3 at ¶¶ 136, 141). Plaintiff appears to allege that this conspiracy began after Horne, Lyles, and Curlee placed Plaintiff in administrative segregation on January 24, 2011. "To establish a civil conspiracy under § 1983 [Plaintiff] must present evidence that [Defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in Appellants' deprivation of a constitutional right." Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 421 (4th Cir. 1996). "[Plaintiff] ha[s] a weighty burden to establish a civil rights conspiracy," and he must present at least "specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Id.

Plaintiff fails to satisfy this burden, as he shows neither causation nor the shared conspiratorial objective. Plaintiff seems to allege that the requisite "overt act" occurred when Defendants Horne, Lyles, and Curlee placed him in segregation on January 24, 2011. Even if this was done in furtherance of a conspiracy, Plaintiff fails to explain how this resulted in a

17

deprivation of his First Amendment Rights. At most, he was placed in segregation for a few hours and released the same day. He fails to explain how this brief segregation adversely affected any of his numerous grievances and lawsuits. Plaintiff likewise fails to come forward with any circumstantial evidence that Defendants shared a conspiratorial objective. According to Plaintiff's own recital of the facts, he was placed in segregation because he twice steadfastly refused to get out of his bed and stand for the prison count. For these reasons, Plaintiff's claims of civil conspiracy cannot survive Defendants' motion for summary judgment.

F. Due Process Claims

Plaintiff also purports to allege a series of due process violations, including that Defendants refused to call the sergeant; required him to stand for prison counts; moved him to the segregation unit without his consent after he refused to comply with orders; failed to post prison policy changes; and committed numerous other general violations of his due process rights. (Doc. No. 3 at ¶¶ 173, 175-79, 181-84). These allegations are likewise without merit.

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." Id. To successfully state a cause of action for deprivation of due process stemming from prison conditions, Plaintiff must first establish the existence of a liberty interest for which the protection is sought. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies." Id. (internal citations omitted). As Plaintiff does not point to any liberty interest under the Due

Process Clause itself, the Court must determine if any of these alleged deprivations implicate a liberty interest under state law or prison policy. To implicate such a liberty interest, the deprivation must "impose[] atypical and significant hardship on the inmate in relation to the ordinary incident of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

First, Plaintiff's brief stints in administrative segregation does not constitute atypical and significant hardship. Both times he was placed in segregation he was there for a matter of hours and was released the same day. Furthermore, Defendants' decision to place him in segregation was not an arbitrary one, but was, instead, a necessary response to Plaintiff's disobedience. Both times Plaintiff had refused direct orders.

Plaintiff's remaining due process claims are likewise meritless, as they fall far short of subjecting him to hardship atypical to the normal incidents of prison life. For example, he claims that Defendants Bennett and Mason violated his due process rights when they refused to summon Sergeant Horne to Plaintiff's cell during the incident on December 19, 2010. But such a refusal does not expose Plaintiff to atypical hardship. Plaintiff's due process claims are therefore dismissed.

## IV. CONCLUSION

For the reasons stated herein, Defendants are entitled to summary judgment.

**IT IS, THEREFORE, ORDERED** that:

1. Motion for Summary Judgment by Defendants Horne, Bennett, Mason, Lowery, Lyles, Curlee and Aaron, (Doc. No. 38), is **GRANTED**, and this action is **DISMISSED** with prejudice;

2. Motion to Compel by Plaintiff, (Doc. No. 37), is **DISMISSED** as moot;

3. Motion for Protective Order by Defendants Horne, Bennett, Mason, Lowery,

Lyles, Curlee and Aaron, (Doc. No. 41), is **DISMISSED** as moot;

4. Motion to Compel by Plaintiff, (Doc. No. 42), is **DISMISSED** as moot;

5. "Pro se Motion" by Plaintiff, (Doc. No. 52), is **DISMISSED** as moot; and

6. The Clerk is directed to close this case.

Signed: March 21, 2013

Robert J. Conrad, Jr.
Chief United States District Judge